IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-552-D

| | |
|---|---|
| DAVID WAYNE ROUSE, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| NUTRIEN AG SOLUTIONS, INC. ) | |
| ) | |
| Appellee. ) | |

On October 20, 2020, David Wayne Rouse ("Rouse" or "debtor") appealed the October 2, 2020 order of the United States Bankruptcy Court for the Eastern District of North Carolina ("Bankruptcy Court") denying Rouse's motion for a hardship discharge under 11 U.S.C. § 1228(b) [D.E. 1]. As explained below, the court grants Rouse's motion to correct the record and affirms the Bankruptcy Court's order.[1]

I.

Rouse is a farmer in Robeson County, North Carolina. See [D.E. 9-1] 4–5, 53. Nutrien Ag Solutions, Inc. ("Nutrien" or "creditor") is one of Rouse's unsecured creditors and holds an allowed general unsecured claim for $945,348.31. See id. at 133. On November 14, 2016, Rouse filed a voluntary Chapter 12 petition in the Bankruptcy Court. See id. at 4. From February to May 2017, Rouse, Nutrien, and Rouse's other creditors negotiated a Chapter 12 Plan of Reorganization ("Plan

---

[1] Under Federal Rule of Bankruptcy Procedure 8009(e)(2), a district court considering an appeal from a final order of a bankruptcy court may correct or modify the record where "anything material . . . is omitted from . . . the record by . . . accident." Fed. R. Bankr. P. 8009(e)(2); see In re McCarthy, No. 2:19-cv-664-FtM-38, 2020 WL 8970606, at *1 (M.D. Fla. Mar. 2, 2020) (unpublished). Rouse moves to correct portions of the record which are "corrupted and [] illegible" by submitting a "legible, true, and accurate" version of the "Trustee's Individual Chapter 12 Quarterly Report." [D.E. 18] 1 (quotation omitted); see [D.E. 18-1]; cf. [D.E. 9-1] 90–94 (illegible report). The court grants Rouse's motion to correct the record.

of Reorganization"). During the negotiations, the parties had to calculate the amount that each general unsecured creditor would receive in a hypothetical liquidation of Rouse's assets under a Chapter 7 bankruptcy proceeding less administrative fees, including attorneys' fees. See id. at 72; 11 U.S.C. § 1225(a)(4). Although Rouse incurred $17,487.50 in attorneys' fees as of May 2017, Rouse negotiated with his creditors to reduce the attorneys' fees amount used in calculating the administrative costs of a hypothetical liquidation to $10,000. See [D.E. 1-1] 6; [D.E. 10-1] 66–75. Rouse's creditors then consented to his proposed Plan of Reorganization. See [D.E. 9-1] 152. On March 24, 2017, Rouse filed his Plan of Reorganization with the Bankruptcy Court. See id. at 70. The Plan of Reorganization contained a liquidation analysis reflecting the parties' negotiated estimated attorneys' fees of $10,000 and required Rouse to pay to his general unsecured creditors a total of $50,687. See id. at 72, 81. On May 23, 2017, the Bankruptcy Court entered an order confirming Rouse's Plan of Reorganization with an effective date of June 7, 2017, and Rouse began making payments under the plan. See Order, In re Rouse, No. 16-05920-5-JNC (Bankr. E.D.N.C. May 23, 2017) [D.E. 92]; [D.E. 1-1] 2.

On June 27, 2020, an assailant shot Rouse multiple times. See [D.E. 1-1] 2. After shooting Rouse, the assailant killed two other people and then killed himself. See id. Rouse suffered gunshot wounds to his torso, chest, arms, and hand, resulting in shattered bones, finger amputation, and muscle, nerve, and vascular damage. See id. Rouse spent more than a month in the hospital, endured multiple surgeries, and will require more surgeries and physical therapy. See id. Rouse depends on his wife and healthcare workers for assistance with his basic needs. See id. Due to his extensive injuries, Rouse cannot farm for the foreseeable future. See id.

On July 23, 2020, Rouse moved for a hardship discharge pursuant to 11 U.S.C. § 1228(b). See [D.E. 9-1] 128–29. On August 25, 2020, Nutrien objected to Rouse's motion. See id. at 133–35. On September 2, 2020, the Bankruptcy Court held a hearing pursuant to 11 U.S.C. § 1228(f). See [D.E. 1-1] 1. At the hearing, the parties agreed that Rouse had paid $43,465.64

2

towards the claims of general unsecured creditors, that Rouse's injuries were circumstances rendering him unable to complete payments under his Plan of Reorganization for which he should not be held accountable under section 1228(b)(1), and that modification of the Plan of Reorganization under section 11 U.S.C. § 1229 was not practicable under section 1228(b)(3). See id. at 3–5. The parties disagreed about whether Rouse satisfied section 1228(b)(2)'s requirement that Rouse have actually distributed property under the Plan of Reorganization not less than the amount that each allowed unsecured claim would have received had Rouse's estate been liquidated under Chapter 7 on the Plan's effective date of June 7, 2017. See id. at 5–7. Rouse claimed that he was not bound by the negotiated $10,000 attorneys' fees amount contained in the confirmed Plan of Reorganization. See id. at 6–7. Instead, Rouse argued that the Bankruptcy Court should conduct the liquidation analysis anew taking into account the actual amount of attorneys' fees Rouse incurred—approximately $18,000. See id. Nutrien disagreed, noted that Rouse had incurred over $17,000 in attorney's fees at the time of the initial negotiations, and contended that the Bankruptcy Court should hold Rouse to the negotiated $10,000 amount. See id.

On October 2, 2020, the Bankruptcy Court denied Rouse's motion. See id. at 11. In its order, the Bankruptcy Court held that the liquidation analysis contained in the Plan of Reorganization, including the negotiated attorneys' fees amount of $10,000, continued to apply. See id. at 8–9. The Bankruptcy Court also held that to satisfy section 1228(b)(2)'s requirement, Rouse had to pay $11,339.62, that is, the $50,687 Rouse owed his general unsecured creditors plus three percent interest imposed from June 7, 2017 minus the $43,465.64 that Rouse had paid to date. See id. at 11. After considering the entire record and finding that Rouse had not met section 1228(b)(2)'s requirement, the Bankruptcy Court denied Rouse's hardship motion. See id. Rouse appealed.

II.

The Bankruptcy Court possessed authority to enter a final order, and this court has jurisdiction over this appeal. See, e.g., 28 U.S.C. § 158(a); Exec. Benefits Ins. Agency v. Arkison, 573 U.S. 25, 33–37 (2014); Stern v. Marshall, 564 U.S. 462, 482–503 (2011). "The grant or denial of a debtor's request for a hardship discharge is within the discretion of the bankruptcy court, and the standard of review is abuse of discretion." In re Bandilli, 231 B.R. 836, 838 (B.A.P. 1st Cir. 1999); see 11 U.S.C. § 1228(b) ("[T]he court may grant a discharge to a debtor . . . ."); In re Ritter, 626 B.R. 35, 39–40 (Bankr. C.D. Cal. 2021); In re Marshall, No. 09-11603-8-RDD, 2012 WL 1155742, at *2 (Bankr. E.D.N.C. Apr. 5, 2012) (unpublished). "A [] court abuses its discretion when it . . . relies on erroneous . . . legal premises, or commits an error of law." United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007); see United States v. Williams, 461 F.3d 441, 445 (4th Cir. 2006); In re Glasco, 321 B.R. 695, 699 (Bankr. W.D.N.C. 2005).

In the Bankruptcy Court, Rouse moved for a hardship discharge under 11 U.S.C. § 1228(b). Section 1228(b) provides:

> Subject to subsection (d), at any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if–
>
> (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
>
> (2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and
>
> (3) modification of the plan under section 1229 of this title is not practicable.

11 U.S.C. § 1228(b).

To receive a hardship discharge, a debtor must satisfy all three of section 1228(b)'s requirements. See In re Grimm, 145 B.R. 994, 998 (Bankr. D.S.D. 1992). The parties agree that Rouse has satisfied the requirements in sections 1228(b)(1) and (b)(3). As for section 1228(b)(2),

4

a debtor does "not qualify for such a discharge [if] the unsecured creditors ha[ve] not been paid the amount they would have been paid under a Chapter 7 liquidation." In re Grooms, 64 F. App'x 922, 923–24 (6th Cir. 2003) (unpublished); see 11 U.S.C. § 1228(b)(2).

The parties dispute the meaning of section 1228(b)(2). "When interpreting a statute, we begin with the plain language." In re Total Realty Mgmt., LLC, 706 F.3d 245, 251 (4th Cir. 2013); see Crespo v. Holder, 631 F.3d 130, 133 (4th Cir. 2011). "To determine a statute's plain meaning, we not only look to the language itself, but also the specific context in which that language is used, and the broader context of the statute as a whole." Total Realty, 706 F.3d at 251 (quotation omitted); see Holland v. Big River Mins. Corp., 181 F.3d 597, 603 (4th Cir. 1999). Courts generally interpret identical terms or phrases in different parts of the same statutory scheme as having the same meaning. See Sullivan v. Stroop, 496 U.S. 478, 484 (1990); Healthkeepers, Inc. v. Richmond Ambulance Auth., 642 F.3d 466, 472 (4th Cir. 2011). "This presumption of consistent usage ensures that the statutory scheme is coherent and consistent." Total Realty, 706 F.3d at 251 (alterations and quotation omitted); see In re Parke, 369 B.R. 205, 208 (Bankr. M.D. Pa. 2007).

The language in section 1228(b)(2) corresponds to the language in section 1225(a)(4), which supplies the "best interests of the creditors test" that bankruptcy courts use to confirm Chapter 12 plans of reorganization before their effective dates. Matter of Fortney, 36 F.3d 701, 704 (7th Cir. 1994). Section 1225(a)(4) provides:

> [T]he court shall confirm a plan if . . . the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

11 U.S.C. § 1225(a)(4).

Section 1225(a)(4) is drafted in the future tense (i.e., "to be distributed" and "would be paid") while section 1228(b)(2) is drafted in the past tense (i.e., "actually distributed," "would have been paid"). This distinction makes sense given the purposes of each section. Section 1225(a)(4)

5

describes the requirements for a bankruptcy court to confirm a Chapter 12 plan of reorganization. A bankruptcy court's confirmation of a Chapter 12 plan of reorganization will always occur before the plan's effective date and before a debtor's motion for discharge from that plan of reorganization under section 1228(b). Thus, the use of the future and past tenses in the two sections does not indicate that the sections contemplate two different analyses. Rather, the statutory language recognizes the timing of the confirmation of a plan of reorganization, i.e., before the plan's effective date, versus a motion for discharge from that plan, i.e., after the plan's effective date. See In re Shorter, 544 B.R. 654, 668–69 (Bankr. E.D. Ark. 2015) (interpreting parallel sections in Chapter 13); In re Cummins, 266 B.R. 852, 856 (Bankr. N.D. Iowa 2001) (same); In re Schleppi, 103 B.R. 901, 904 (Bankr. S.D. Ohio 1989) ("The best interests test under section 1328(b)(2) is essentially the same as that required for the confirmation of a plan under section 1325(d)(4), except that their temporal perspectives differ." (quotation omitted)); see also Parke, 369 B.R. at 208 (stating that where a phrase "appears in the Bankruptcy Code eighteen times . . . the Court shall look to other precedential interpretations of those sections for guidance"). Essentially, the two sections describe the same "best interests of the creditors" analysis, with section 1225(a)(4) looking forward to the confirmation of a plan of reorganization with a future effective date and section 1228(b) looking backwards to a plan of reorganization's previous effective date.

In light of this conclusion, when determining whether a debtor has satisfied the requirements of section 1228(b)(2), a court examines whether the debtor has "actually distributed" property equal to an amount that would have been paid if the debtor's estate had been liquidated under Chapter 7 as of the effective date as determined under the best interests of the creditors test. See In re Taylor, No. 2:15-bk-20026, 2016 Bankr. LEXIS 4204, at *6–7 (Bankr. S.D. W. Va. Dec. 8, 2016) (unpublished) (referring to the liquidation analysis in the debtor's confirmed plan of reorganization in determining whether the debtor satisfied the best interests of the creditors test for purposes of a hardship discharge); Shorter, 544 B.R. at 668; In re Phillips, Nos. 10-33023-DHW, 13-30162-DHW,

6

2014 WL 3700548, at *4–5 (Bankr. M.D. Ala. 2014) (unpublished) ("[T]he property value for best interest purposes is established as of the effective date of the plan."); In re Dark, 87 B.R. 497, 498–99 (Bankr. N.D. Ohio 1988) (holding that the liquidation analysis established in the confirmed plan established the amount that must be paid to satisfy the requirements for a hardship discharge). Interpreting sections 1225(a)(4) and 1228(b)(2) in this fashion comports with the plain language of the statutes and ensures consistency in the statutory scheme. Moreover, this approach promotes judicial economy by not requiring courts to recalculate the best interests of the creditors test every time a debtor moves for a hardship discharge. Cf. Moses v. CashCall, Inc., 781 F.3d 63, 75–76 (4th Cir. 2015) (noting that concerns about efficiency and judicial economy are "at the heart of the Bankruptcy Code."); In re Gandy, 299 F.3d 489, 499 (5th Cir. 2002).

In opposition, Rouse argues that the plain language of section 1228(b)(2) requires a court to recalculate the amount that would have been paid in a hypothetical Chapter 7 liquidation of the debtor's estate. See [D.E. 14] 11–13; [D.E. 17] 7–9. According to Rouse, the liquidation analyses described in sections 1225(a)(4) and 1228(b)(2) refer to independent calculations, one occurring before a plan's effective date and one occurring after the plan's effective date when a debtor files a section 1228(b)(2) motion for discharge. From that premise, Rouse contends that the court is not bound by the liquidation analysis in Rouse's confirmed Plan of Reorganization and may conduct the liquidation analysis anew after a motion for hardship discharge. Thus, according to Rouse, a court can ignore calculations contained in a previously negotiated plan of reorganization confirmed under section 1225(a)(4) and can make new calculations.

The court rejects Rouse's argument as inconsistent with the plain language of the statute, a holistic consideration of the statutory scheme, and the general canons of interpretation. See, e.g., Total Realty, 706 F.3d at 251. Rouse's interpretation also forces courts to perform duplicate calculations. Cf. Moses, 781 F.3d at 75–76. Finally, even if Rouse is correct and the Bankruptcy Court had the discretion to make new calculations, Rouse's argument ignores the Bankruptcy Court's

7

thorough and thoughtful analysis of the statutory provisions and the specific facts of this case, and the Bankruptcy Court's explanation why it was not making new calculations in this case. The Bankruptcy Court did not abuse its discretion. Accordingly, the court affirms the Bankruptcy Court's order denying Rouse's motion for hardship discharge.

III.

In sum, the court GRANTS Rouse's motion to correct the record [D.E. 18] and AFFIRMS the Bankruptcy Court's October 2, 2020 order [D.E. 9-1].

SO ORDERED. This 12 day of July 2021.

JAMES C. DEVER III
United States District Judge